FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 24, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREW S.,<br><br>                    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  1:17-CV-3151-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment.  ECF Nos. 15, 16.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Sarah L. Martin.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 15, is granted and Defendant's Motion, ECF No. 16, is denied.

/ / /

/ / /

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in February 1993 and was 20 years old at the time of the hearing. Tr. 214. He did not graduate from high school but later earned a GED. Tr. 43. At the time of the hearing, he had been attending community college full-time for about three weeks. Tr. 43-44. His was let go from his last job at Home Depot after about a month. Tr. 44-45. He previously worked for short stints on a fishing boat in Alaska, at Burger King, as a grocery courtesy clerk, processing cherries, and as an IT intern. Tr. 47-48.

Plaintiff testified that he has not been able to perform full-time work due to symptoms of Crohn's disease, such as frequent bathroom visits, limits on lifting, dizziness, fatigue, frequent breaks, and missing work due to not being able to get out of bed. Tr. 49, 53. He testified that he also has mental limitations, such as stress from not being able to perform at work. Tr. 49. He deals with issues from Crohn's every day and sometimes has flare-ups when his symptoms are worse. Tr. 53. During a flare-up, he cannot get out of bed without becoming dizzy. Tr. 53. He has difficulty making it to the bathroom before a bowel movement and cannot lift anything. Tr. 53.

Additionally, Plaintiff testified that if he sits for too long he experiences cramping and nausea and needs to use the restroom.  Tr. 50.  He also cannot lay down too long or move too much.  Tr. 50.  He needs to change positions and activities frequently throughout the day.  Tr. 50.  Bending and lifting increase his symptoms.  Tr. 51-52.

## JURISDICTION

Plaintiff Andrew S.[1] ("Plaintiff") filed for supplemental security income ("SSI") on October 17, 2013, alleging an onset date of September 17, 2013.  Tr. 214-17.  Benefits were denied initially, Tr. 98-101, and upon reconsideration, Tr. 105-06.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 28, 2016.  Tr. 39-71.  On April 14, 2016, the ALJ denied Plaintiff's claim, Tr. 20-31, and on July 5, 2017, the Appeals Council denied review.  Tr. 1-5.  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

/ / /

/ / /

# FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 17, 2013, the application date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairment: Crohn's disease. Tr. 22. At

step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then found Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit for about six hours and stand and/or walk for about six hours in an eight-hour day with regular breaks, and he needs to be able to shift between standing and sitting every 30 to 60 minutes over the day. The claimant has an unlimited ability to push/pull within these exertional limitations. Lastly, the claimant needs easy access to a restroom.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 29. After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as small parts assembler, marking clerk, or mail room clerk. Tr. 30. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since October 17, 2013, the date the application was filed. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for review:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1.    Whether the ALJ improperly discredited Plaintiff's symptom claims; and

2.    Whether the ALJ failed to properly consider the medical opinion evidence.

ECF No. 15 at 1.

## DISCUSSION

**A.    Symptom Claims**

Plaintiff contends the ALJ applied the wrong standard and improperly rejected his symptom claims.  ECF No. 15 at 6-18.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom claims, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

As a preliminary matter, the Court notes that the ALJ considered an out-of-date standard in evaluating Plaintiff's subjective symptom testimony. The ALJ analyzed Plaintiff's testimony using S.S.R. 96-7p, Tr. 25, which was repealed and replaced by S.S.R. 16-3p. Social Security Ruling 16-3p is applicable to decisions

after March 28, 2016, and the ALJ's decision in this case is dated April 14, 2016. Tr. 31. The new ruling clarifies that "subjective symptom evaluation is not an examination of an individual's character," and eliminated the term "credibility." S.S.R. 16-3p at *1. In *Trevizo v. Berryhill*, the Court noted, "[t]his ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." 871 F.3d 664, 679 (9th Cir. 2017) (quoting S.S.R. 16-3p).

As discussed *infra*, the ALJ's evaluation of the record and Plaintiff's symptom claims is legally insufficient. The Court need not determine whether the ALJ's error in considering S.S.R. 96-7p is harmless, as Defendant urges, ECF No. 16 at 5-6, since this matter is remanded on other grounds. On remand, the ALJ shall consider S.S.R. 16-3p in evaluating Plaintiff's symptom claims.

In assessing Plaintiff's symptom claims, the ALJ first found Plaintiff's allegations regarding his symptoms and limitations have generally been inconsistent with the medical evidence and are therefore unpersuasive. Tr. 26. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.

1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found Plaintiff's alleged 40 pound weight loss is not supported by the record.  Tr. 26.  The ALJ cited an August 2014 record from Plaintiff's treating gastroenterologist, Vu Le, M.D., indicating that he had lost 40 pounds over the last year and a half.  Tr. 26, 653.  The ALJ observed that Plaintiff has not experienced any large weight fluctuations over the course of the record and noted weights of 170 pounds (77.11 kg) on October 6, 2013 (Tr. 308); 167.0 pounds on August 28, 2014 (Tr. 653); 167 pounds on August 29, 2014 (Tr. 599); 160 pounds on January 14, 2015 (Tr. 859); 160 pounds in March 2014; and 171.4 pounds on July 8, 2015 (Tr. 908).  Tr. 26.  The difference of approximately 11 pounds across records cited by the ALJ is reasonably construed as a relatively small weight fluctuation in the context of an alleged 40-pound weight loss.

Notwithstanding, Plaintiff points out that Dr. Le originally noted Plaintiff's statement that he had lost 40 pounds over the last year and a half in September 2013, Tr. 422, and that the August 2014 record cited by the ALJ lists the weight loss statement under Plaintiff's history, suggesting it was not a new statement.  ECF No. 15 at 9; Tr. 653.  Plaintiff also notes that a record from July 2013

indicates Plaintiff weighed 181 pounds (82.1 kg), but by December 2013 his

weight was 160 pounds (72.57 kg), a 21-pound weight loss. ECF No. 15 at 9

(citing Tr. 399, 481[2]).

Plaintiff contends the ALJ "did not identify any actual inconsistency," and

that Plaintiff's allegation of a 40-pound weight loss is consistent with the record.

ECF No. 15 at 9. The Court fails to see how a documented 20-pound weight loss

is consistent with Plaintiff's assertion of a 40-pound weight loss. The ALJ's

determination that an alleged 40-pound weight loss is inconsistent with the record

is correct.

However, the ALJ misread or overlooked Dr. Le's September 2013 record

noting Plaintiff's claim of a 40-pound weight loss over the preceding 18 months,

which suggests Plaintiff had lost 40 pounds since March 2012. Tr. 422. Based on

the September 2013 record, part of the alleged 40-pound weight loss must have

---

[2] The Court does not find a reference to Plaintiff's weight of 82.1 kilograms on

page 399 of the transcript, nor anywhere in the record related to that emergency

room visit on July 31, 2013. Additionally, page 481 of the transcript records a

weight of 72.57 kilograms rather than 62.57 kilograms mentioned in Plaintiff's

briefing, although Plaintiff properly converted 72.57 kilograms to 160 pounds.

Nonetheless, the Court assumes scrivener's errors account for the discrepancies

and gives Plaintiff the benefit of the doubt in evaluating the weights asserted.

preceded the earliest record in this case, which is from July 2013. Thus, while the ALJ's determination that a 40-pound weight loss is not supported by the record is correct, it is not particularly persuasive or convincing that Plaintiff's claim of weight loss is exaggerated, since it is possible that Plaintiff accurately reported weight loss which is not documented in the record.

The ALJ also found that Plaintiff's testimony regarding hospitalizations related to Crohn's disease is not supported by the record. Tr. 27. According to the ALJ, Plaintiff alleged, "that he was hospitalized repeatedly for extended periods of time in 2014." Tr. 27 (citing Tr. 53, 545). When asked how often he had flare-ups of Crohn's disease, Plaintiff testified, "[i]n the year 2014 I was in the hospital six times for severe flare-ups, and they ranged from about two weeks long." Tr. 53. However, as Plaintiff asserts, while the ALJ found this testimony meant Plaintiff alleged being in the hospital for "extended periods of time," it is clear from the context of Plaintiff's testimony that his reference to "two weeks" meant the length of the flare-up, not the length of time he spent in the hospital. Tr. 27, 53; ECF No. 15 at 9-10. There is no reasonable construction of Plaintiff's testimony about flare-ups that suggests he was reporting multiple extended stays in the hospital due to Crohn's flare-ups.

With regard to the number of emergency room visits in 2014, the ALJ found that, contrary to Plaintiff's assertion that he visited the ER six times in 2014, he visited the emergency room only twice due to Crohn's flare-ups, once in April

2014 and once in August 2014.  Tr. 27 (citing Tr. 542, 545, 660).  However, Plaintiff also visited the emergency room in June 2014 for abdominal pain caused by Crohn's disease, Tr. 841-42, and in November 2014 for abdominal pain and vomiting, although Crohn's disease was not specifically mentioned on that visit, Tr. 772.[3]

Plaintiff additionally cites a January 1, 2015 ER visit for a Crohn's flare-up which had been going on for three days, Tr. 760, although the Court notes that this does not count as an ER visit in 2014, even if symptoms began in 2014.  ECF No. 15 at 10.  Plaintiff also cites a second June 2014 ER visit for side effects from Crohn's medication, Tr. 666, although the Court notes that Plaintiff's symptoms in that instance were not related to a Crohn's flare-up, *per se*.  Whether Plaintiff visited the ER three, four, or six times for Crohn's flare-ups is a matter open to interpretation, but it is apparent that the ALJ's finding that Plaintiff visited the ER only twice for Crohn's flare-ups is incorrect.  The ALJ's failure to consider other evidence of emergency room visits for Crohn's-related issues means the ALJ's finding is not supported by substantial evidence.

---

[3] Plaintiff asserts an additional record from an ER visit to another hospital occurred in April 2014, but that record is a duplicate of the record previously mentioned. ECF No. 15 at 10; *compare* Tr. 542-46 *with* Tr. 670-74.

Next, the ALJ considered the results of a colonoscopy and a CT scan.  Tr. 27.  The ALJ noted the results of a September 2014 colonoscopy showed no signs of inflammation and found it meant Plaintiff's Crohn's disease was not active.  Tr. 27, 594; *see also* Tr. 909-10.  Plaintiff acknowledges the colonoscopy showed only internal hemorrhoids, but asserts that "an endoscopy performed this same day showed inflammation throughout the upper GI tract."  ECF No. 15 at 11 (citing Tr. 594).  Plaintiff overstates the record, which says only that the endoscopy (EGD) revealed "mild esophagitis, duodenitis/gastritis" and that Dr. Le prescribed omeprazole.  Tr. 594.  The evidence cited by Plaintiff does not contradict the ALJ's conclusion regarding inflammation of the colon.  This portion of the ALJ's finding is supported by substantial evidence.

The ALJ also noted that during a March 2015 ER visit for abdominal pain, CT scan findings were unremarkable with nonspecific findings of inflammation in the liver, possibly due to a viral illness.  Tr. 27, 738-39.  Plaintiff contends that this is "one inconclusive test," and that "all other scans showed positive GI inflammation."  ECF No. 15 at 11 (citing Tr. 368, 388, 786-87).  Plaintiff is correct that an August 2013 CT included "findings compatible with A colitis, possibly infectious, inflammatory in etiology."  Tr. 368.  A second CT in September 2013 found, "[t]hickened appearance of the descending colon.  Some of this may be due to lack of distension but colitis is also considered."  Tr. 388.  A November 2014

CT found "mild segmental mural thickening of a distal loop of small bowel suggestive of inflammatory enteritis." Tr. 786-87.

The ALJ is correct that the March 2015 test showed no inflammation, but the ALJ did not address the three prior CT scans indicating at least some inflammation. The ALJ did not draw any specific conclusion about the March 2015 CT scan, but seems to imply that there is no CT scan evidence supporting Plaintiff's complaints. Tr. 27. While the three earlier CT scans suggest only mild findings which may not ultimately support Plaintiff's claim of disabling Crohn's disease, the ALJ's failure to address those earlier scans means that the conclusion that there is no CT scan evidence of inflammation is not supported by substantial evidence. Without further discussion by the ALJ, the March 2015 CT scan is not a convincing basis for concluding Plaintiff's symptom claims are inconsistent with the objective evidence.

Lastly, the ALJ found that Plaintiff's claims of chronic fatigue and dizziness are not supported by the record. Tr. 27. The ALJ noted that in December 2013, Plaintiff reported he "overall feels fatigued" but he was able to perform his day-to-day activities.[4] Tr. 27, 575. The ALJ noted two occasions when Plaintiff

_____

[4] Defendant asserts that by considering a record noting Plaintiff experienced fatigue but could do his daily activities, the ALJ "found that [Plaintiff's] allegations of constant dizziness and fatigue were inconsistent with the fact that he said he was

complained of fatigue in October and November 2014 and asserted that Plaintiff

otherwise "repeatedly denied fatigue." Tr. 27, 622, 703. However, the ALJ cited

only two additional records supporting the assertion that Plaintiff "repeatedly"

denied fatigue.[5] Tr. 27, 859, 870. Plaintiff noted at least one other instance when

fatigue was reported, Tr. 653, and one instance where "tiredness" was reported, Tr.

870. ECF No. 15 at 12. The Court notes an additional record indicates Plaintiff

reported being "drained." Tr. 657. The ALJ's assertion that Plaintiff "repeatedly

denied fatigue" is not supported by two instances where fatigue was denied. Based

on the foregoing, it is not clear that the fatigue evidence is inconsistent with

Plaintiff's symptoms complaints.

   With regard to Plaintiff's dizziness complaints, the ALJ noted Plaintiff's

dizziness was described as episodic in December 2013. Tr. 27, 575; *see also* Tr.

586. The ALJ found there were few subsequent reports of Crohn's-related

---

able to complete his daily activities despite his symptoms." ECF No. 16 at 8

(citing TR. 247). The ALJ made no such finding, and the Court is constrained to

review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery

Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th

Cir. 2001).

[5] The ALJ cited an additional record, Exhibit 15F at page 116. Exhibit 15F

contains only 67 pages, so the citation was not considered. Tr. 609-75.

dizziness, suggesting the evidence is inconsistent with Plaintiff's complaints of frequent dizziness. Tr. 26-27, 49, 247. The ALJ cited a record noting that in August 2014, Plaintiff reported dizziness and being "drained" with pain, nausea, vomiting and diarrhea, Tr. 657, but in October 2014 Plaintiff denied dizziness after falling from his tree and hitting his head, Tr. 639. Tr. 27. Plaintiff cites one additional record indicating dizziness from January 2015, ECF No. 15 at 12 (citing Tr. 898-906), and the Court notes that Plaintiff also reported dizziness at an ER visit in March 2015. Tr. 892. Here, the ALJ's characterization of "few" reports of dizziness is supported by substantial evidence and the dizziness evidence was reasonably determined to be inconsistent with Plaintiff's complaints.

The ALJ cited a number of examples in the record purportedly inconsistent with the objective evidence. Tr. 26-27. However, most of the examples cited by the ALJ are based on errors in considering the evidence or conclusory overstatements of the record, or are otherwise unpersuasive. In light of the ALJ's errors in considering the record, the few findings that are supported by the evidence are insufficient to constitute a clear and convincing basis for concluding the objective evidence is inconsistent with Plaintiff's symptom claims.

Second, the ALJ found Plaintiff was not entirely compliant in taking prescribed medications or following physician recommendations, suggesting his condition is not as severe as alleged. Tr. 27. It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility.

*See Molina*, 674 F.3d at 1113 -14 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair*, 885 F.2d at 603-04. While there are any number of good reasons for not doing so, *see*, e.g., 20 C.F.R. § 404.1530(c); *Gallant*, 753 F.2d at 1455, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony. *Fair*, 885 F.2d at 603-04. In any event, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The ALJ acknowledged that some of Plaintiff's noncompliance was due to problems with insurance coverage. Tr. 27, 56, 259. The ALJ noted that in April 2014, Plaintiff reported that, due to insurance issues, he did not start the medication Asacol which had been prescribed five months earlier, and he had stopped taking sulfasalazine at that time, as well. Tr. 27, 427, 572. The ALJ observed that Plaintiff stopped sulfasalazine because he did not think it was helping much, suggesting Plaintiff was noncompliant, but overlooked statements in the same record indicating Plaintiff was "told to stop by GI" and "[w]as told to stop by phone 4 days ago." Tr. 27, 427. In April 2014, Plaintiff had been without Crohn's treatment for five months, and the ALJ noted Dr. Guturu indicated "his symptoms [loose stools on a daily basis] are suggestive of uncontrolled disease

rather than flareup." Tr. 27, 573. The ALJ acknowledged Plaintiff experienced side effects from medication such as rash and constipation, but noted the provider again indicated his symptoms were due to uncontrolled Crohn's. Tr. 27, 654.

The ALJ's reasoning is unconvincing. The ALJ noted lack of insurance coverage and side effects from medications as excuses for noncompliance, but did not find those reasons unbelievable. *Fair*, 885 F.2d at 603-04. Since Plaintiff was unable to take medication due to side effects, was unable to take medication due to lack of insurance coverage, and was directed to stop certain medication, the implication that Plaintiff's noncompliance with medication caused his Crohn's to be uncontrolled is not supported by substantial evidence.

Next, the ALJ found that other noncompliance exacerbated some of Plaintiff's symptoms. Tr. 27. The ALJ observed that in December 2014, Plaintiff's physician referred him to physical therapy for abdominal pain, and in January 2015 it was noted that he was waiting to find a physical therapy clinic his insurance would cover, Tr. 27, 590, 868. The ALJ noted there is no evidence that Plaintiff ever started physical therapy, implying this was due to noncompliance. Tr. 27. However, it is not apparent from the record that an opportunity for physical therapy was ever established, or that the lack of physical therapy was a matter of noncompliance. The record is silent about physical therapy after January 2015, so this is not compelling evidence of noncompliance.

The ALJ also cited a record from October 2013 noting that, one month after Plaintiff's gastroenterologist advised him not to lift more than ten pounds, he picked up his "heavier" girlfriend and then complained of intense abdominal pain. Tr. 27, 376. This is an instance which could be reasonably construed as noncompliance with medical recommendations. Plaintiff acknowledged this was an "admittedly self-inflicted exacerbation," but argues that this is evidence that "contradicts the RFC" by demonstrating that Plaintiff is more limited than the RFC finding. ECF No. 15 at 16. The argument is not persuasive. The RFC finding limits Plaintiff to lifting or carrying 20 pounds occasionally and 10 pounds frequently. Tr. 25. Plaintiff's girlfriend presumably weighs well over 20 pounds, so any injury from attempting to lift her would not be inconsistent with the RFC finding.

Lastly, the ALJ found that Plaintiff made relatively infrequent trips to the doctor for his allegedly disabling symptoms, and that Plaintiff failed to show up for doctor appointments on a number of occasions. Tr. 27. The ALJ noted that after visiting his gastroenterologist, Dr. Le, in August 2014, Plaintiff missed the next three appointments and a video capsule endoscopy study. Tr. 27, 907. The ALJ further observed that when Plaintiff returned to Dr. Le in July 2015, he complained that nothing relieved the constant sharp pain in his lower mid abdomen. Tr. 28, 907-08. The pain in his right lower quadrant was gone, and the ALJ noted Plaintiff's bowel movements had improved from two to three per day in September

2013 and April 2014 to one per day.  Tr. 28, 421, 572, 908.  The ALJ also noted

Dr. Le found Plaintiff's Crohn's was "mild," and the record showed no further

visits, testing, or medication for Plaintiff's Crohn's disease.  Tr. 28.

Additionally, the ALJ found that Plaintiff's claim that he missed

appointments with Dr. Le due to lack of transportation is not believable.  Tr. 28,

52.  The ALJ noted that bus fare for the three mile ride to Dr. Le's office is $1.00

each way and found it "highly improbable that the claimant has been unable to

afford a $2.00 bus fare to see a specialist for what he is claiming is disabling pain."

Tr. 28.  Plaintiff contends that "while $2 may seem like an insignificant amount of

money to an ALJ, it is [significant] to a man on a fixed income of $197 per

month."  ECF No. 15 at 17.  The ALJ's inference from the evidence is reasonable.

The ALJ made a finding that the reason proffered by Plaintiff for failing to follow

through with his appointments with his treating specialist is not believable, and

therefore reasonably questioned the veracity of Plaintiff's symptom claims on this

basis.  *Fair*, 885 F.2d at 603-04

Plaintiff further contends that he was not consistently treated for a number of

reasons which "clearly justify any lack of treatment."  ECF No. 15 at 17.  Although

the ALJ's findings regarding noncompliance contained errors, the Court does not

make a finding that Plaintiff's lack of treatment was justified as that issue must be

reconsidered by the ALJ.  Similarly, even though some portions of the ALJ's

findings regarding lack of treatment were reasonable, overall, the ALJ's findings regarding lack of treatment were not supported by substantial evidence.

The ALJ misinterpreted and misconstrued the record in evaluating Plaintiff's symptom claims overall. Although a few of the ALJ's symptom claim findings were based on the record and reasonable interpretations of the evidence, the errors and oversights in evaluating the record mean that the ALJ's reasons for finding Plaintiff's symptom claims less than fully credible are not clear and convincing, or supported by substantial evidence. Thus, the matter must be remanded for reconsideration of Plaintiff's symptoms claims.

**B.   Medical Opinions**

Plaintiff contends the ALJ improperly discounted the medical opinion of physician Jeremiah Crank, M.D., and failed to assign weight to the opinions of treating gastroenterologist, Vu Le, M.D., and reviewing physician Brent Packer, M.D. ECF No. 10 at 7-10.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

*1.     Jeremiah Crank, M.D.*

Dr. Crank examined Plaintiff and completed a DSHS "Physical Functional Evaluation" form in December 2013. Tr. 427-33. He diagnosed Crohn's disease with abdominal pain and bloody stools, and indicated the condition caused a marked, or "very significant," interference in Plaintiff's ability to perform work-related activities. Tr. 432. Dr. Crank opined that Plaintiff is limited to sedentary work. Tr. 433. The ALJ gave partial weight to Dr. Crank's opinion. Tr. 28.

Because Dr. Crank's opinion was contradicted by the opinion of reviewing physician, Norman Staley, M.D., Tr. 92-95, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Crank's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ gave one reason for rejecting Dr. Crank's opinion: the ALJ found that there is a lack of subsequent evidence supporting Dr. Crank's assessment of sedentary limitations. Tr. 28. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. The ALJ concluded that the lack of follow up gastroenterology appointments and no ongoing medication for allegedly disabling symptoms reflect an absence of consistent evidence. Tr. 28. However, as discussed *supra*, the ALJ's findings regarding Plaintiff's reasons for not receiving treatment or not complying with treatment are flawed. The Court concludes that the errors in evaluating and weighing the record regarding Plaintiff's symptoms complaints apply equally to the consideration of Dr. Crank's opinion. Thus, substantial evidence does not support the ALJ's reason for rejecting Dr. Crank's conclusions. On remand, Dr. Crank's opinion should be reevaluated and legally sufficient reasons must be provided for rejecting any portion of the opinion.

2.    *Vu Le, M.D., and Brent Packer, M.D.*

In September 2013, Plaintiff saw Dr. Le for complaints of abdominal pain and diarrhea. Tr. 421-22. Dr. Le prescribed medication to treat bright red blood from

the rectum, ordered a colonoscopy, and indicated, "[n]o lifting more than 10 lbs." Tr. 421. The ALJ did not address or mention the lifting limitation in discussing the RFC finding, nor did the ALJ attribute any weight to Dr. Le's statement regarding lifting.

In December 2013, Dr. Packer completed a DSHS "Review of Medical Evidence" form. Tr. 853. He reviewed medical evidence from November 2013 and noted Dr. Crank's opinion that Plaintiff can do sedentary work. Tr. 853. Dr. Packer opined that Dr. Crank's opinion is consistent with the medical evidence and indicated a more restrictive RFC in the future might be appropriate, if Plaintiff's condition could not be controlled with prescription medication. Tr. 853. The ALJ did not address or mention Dr. Packer's opinion in evaluating the medical opinion evidence.

Because this matter is remanded on other grounds, on remand the ALJ should consider and discuss the opinions of Dr. Le and Dr. Packer, and assign weight as the ALJ determines is appropriate.

## CONCLUSION

After reviewing the record and the ALJ's findings, the Court concludes that the ALJ's decision is not supported by substantial evidence and free of harmful legal error. The matter must be remanded for reconsideration of the evidence regarding Plaintiff's symptom claims and for reconsideration of the medical opinion evidence. The ALJ shall consider applicable Social Security Rulings in

effect at the time of the ALJ's new decision, as well as any other appropriate authority. On remand, the testimony of a medical expert may be helpful in interpreting the medical evidence and evaluating the record overall.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** October 24, 2018.


       *s/ Rosanna Malouf Peterson*
       ROSANNA MALOUF PETERSON
       United States District Judge